IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN DOUGLAS, TAMMY DOUGLAS (spouse),
AUSTIN F. DOUGLAS (natural minor son) and
AMBER WHITE (minor step-daughter)

       Plaintiffs,

v.            CIVIL ACTION NO. 3:04-0383

INGRAM BARGE COMPANY and/or
THE OHIO RIVER COMPANY,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' "Motion Re: Spoliation of Evidence, for Imposition of Sanctions Including Summary Judgment, Default Judgment and/or Dismissal with Prejudice of the Petition for Exoneration from or Limitation of Liability, and for an Order to Show Cause Why Petitioner's Counsel should not be held in Contempt of Court or Disbarred from these Proceedings and for Exemplary/Punitive Damages." [Doc. no. 150]. The Court held a hearing on this motion on March 21, 2006. Upon consideration of the evidence presented at the hearing and the arguments and submissions of counsel, the Court **GRANTS, in part,** and **DENIES, in part,** Plaintiffs' motion.

On March 29, 2004, Plaintiff John Douglas suffered serious injuries in an accident involving barge ING 2325, which is owned by Defendant Ingram Barge Company (hereinafter Ingram Barge). As a result, Plaintiffs' counsel filed a Complaint in this Court on April 21, 2004. Two days later, Plaintiffs' counsel boarded barge ING 2325 and barge OR 5234 to conduct an

inspection. At the time, Plaintiffs' counsel states that he believed from interviewing others that Mr. Douglas actually had fallen off the deck of OR 5234 and, therefore, he did not focus his inspection on the surface of the deck of barge ING 2325. Plaintiffs' counsel stated in an affidavit that he was unable to interview Mr. Douglas prior to the inspection because Mr. Douglas was in a coma, but he learned after the initial inspection that Mr. Douglas had fallen off barge ING 2325. Given the gravity of Mr. Douglas' injuries, it is likely that he will receive substantial damages if he is successful in this lawsuit.

At a deposition on May 10, 2005, Plaintiffs' counsel inquired as to whether or not the deck of barge ING 2325 had been painted since the time of the accident. Upon learning that it had not, Plaintiffs' counsel requested, in an off-the-record colloquy, that he be permitted to reboard the barge to conduct a further investigation and conduct a co-efficient of friction test to determine the slipperiness of the deck's surface. Both defense counsel, Don Adams, and in-house counsel for Ingram Barge, Tara Ertischek, told Plaintiffs' counsel the barge had not been repainted but they would not voluntarily permit him to reboard the barge. Counsel for Ingram Barge denied the request as they believed such testing would be irrelevant because of the amount of time that had elapsed since the accident occurred and the fact that the barge had been in service and subjected to, inter alia, various weather conditions, the loading and unloading of coal and iron ore pellets, and being cleaned numerous times. Therefore, they believed testing would be unable to demonstrate the co-efficient of friction that existed at the time of the accident. Plaintiffs' counsel avers that he informed defense counsel and in-house counsel at the deposition that he would be filing a motion for a protective order

to prevent the barge from being repainted and he would be filing a motion to compel seeking permission to conduct further testing on the deck's surface.

On May 18, 2005, Plaintiffs filed a "Motion for Protective Order and for Order to Allow Rule 34(a)(2) *In Situ* Inspection of Barge ING 2325." In its motion, Plaintiffs request the Court prohibit Ingram Barge from altering, painting, or repainting the deck's surface until after such time as Plaintiffs have had an opportunity to have an expert conduct testing on the deck's surface. Upon receiving the motion, Ms. Ertischek spoke with Chief Legal Counsel, who was also a Senior Vice President, about opposing the motion. On June 23, 2005, Mr. Adams attended a meeting with Ingram Barge officials in Nashville, Tennessee, where the motion also was discussed. However, despite clear knowledge of the pending motion and internal discussions about it, neither Mr. Adams nor Ms. Ertischek, nor apparently anyone else in the company, took any steps to ensure that the deck would not be repainted while Plaintiffs' motion was pending before the Court. In fact, unbeknownst to Mr. Adams at the time of his meeting in Nashville, the part of the deck's surface which is the subject of this litigation was repainted on June 21, 2005. Mr. Adams testified at the hearing that he learned about the surface being repainted when he later took his own expert, Dr. Kenneth Means, out to inspect the barge. After Plaintiffs' counsel learned that the surface was repainted, he brought the current motion seeking sanctions for spoliation.

The Fourth Circuit has stated "[s]poliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir.

2001) (citations omitted). Although Ingram Barge readily admits that the repainting should not have occurred while Plaintiffs' motion was pending, it argues the Court should not find spoliation because any testing Plaintiffs would have conducted on the deck's surface would have been inadmissible given the amount of time that had transpired from the date of the accident and the fact that the barge was in continuance service during that time period.

In support, Ingram Barge offered expert testimony from Dr. Means who said it now would be impossible to determine the co-efficient of friction of the deck's surface at the time of the accident. To the contrary, Plaintiffs submitted an affidavit from their expert, Dr. Gary Nelson who stated:

> a scientific range of the probable coefficient of friction of the deck surface in the area where Mr. Douglas sustained his accident which existed of the date of March 29, 2004, could have been accurately determined in accordance with scientific principles by a test permitted on or after May 16, 2005.

*Affidavit of Gary Nelson*, at 6.

Given this affidavit, the Court cannot conclude that relevant evidence could not have been obtained from a reinspection of the deck's surface, and the Court will not speculate as to this matter. Indeed, the Court finds that Ingram Barge's argument that the conditions of the deck had changed since the date of the accident goes more to the weight of the evidence than its relevance or admissibility. During a reinspection, additional photographs could have been taken, expert testing could have occurred, and Mr. Douglas and other fact witnesses could have been consulted as to what they remember the condition of the deck being at the time of the accident as compared to the deck's

condition at the time of the reinspection.  Now, there is no way to get that evidence because the deck was repainted.  In addition, even if Ingram Barge would have had a good argument that the evidence ultimately would have been inadmissible, this possible argument is not enough to deprive Plaintiffs of their reasonable discovery request which may have resulted in admissible evidence.

The Court further recognizes that Mr. Adams is experienced trial counsel in these types of cases and Ms. Ertischek testified that part of her duties as in-house counsel was to handle claims.  Given these facts, it had to be clear to both counsel that preserving the evidence was necessary.  Both conceded they should have instructed that the barge not be repainted until the motion was resolved. Yet counsel took no steps to ensure that the evidence was preserved until a ruling by the Court was made, and the only excuse they offered for not having the evidence preserved was that they just never thought the surface would be repainted.

Upon consideration, the Court finds that these actions were either grossly or wilfully negligent on the part of counsel. The Court does not believe counsel directed that the barge be repainted to spoliate the evidence.  Nevertheless, it is not necessary to prove bad faith in order to obtain relief from spoliation. *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 286 (E.D. Va. 2001). To prove spoliation,

> a movant must show that the adverse party had a duty to preserve the allegedly spoiled documents and that the documents were intentionally destroyed.  The natural consequence of spoliation is that the moving party was prejudiced by the destruction.  The degree of culpability and the prejudice suffered by the moving party will guide a Court in its formulation of remedial and punitive action.

*Id.* In this case, the spoliation is evident. Ingram Barge had clear notice that Plaintiffs wanted the evidence preserved to support their claim and filed a motion to that effect. Given this notice, Ingram Barge had a duty not to paint the deck's surface. *See id*. at 287. As the repainting was done intentionally by Ingram, the issue now for the Court to decide is what remedy should Plaintiffs be afforded.

In fashioning a remedy, the Court finds that Plaintiffs' requests for "Summary Judgment, Default Judgment and/or Dismissal with Prejudice of the Petition for Exoneration from or Limitation of Liability, and for an Order to Show Cause Why Petitioner's Counsel should not be held in Contempt of Court or Disbarred from these Proceedings and for Exemplary/Punitive Damages" are penalties too harsh under the circumstances here. Therefore, the Court **DENIES** Plaintiffs' motion to the extent they seek these remedies. However, the Court finds that the culpability of Ingram Barge's actions is serious enough to warrant an adverse inference instruction at trial. "To draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Vodusek v. Bayliner Marine Corp*., 71 F.3d 148, 156 (4th Cir. 1995). As stated above, the evidence here was relevant to Plaintiffs' claim. In addition, Ingram Barge's arguments about the changed conditions of the deck's surface goes more to the weight of the evidence than its relevancy or admissibility. Although it is now impossible for the Court to determine definitively whether or not the evidence ultimately would have been admissible, the reason the Court cannot make this determination is because of Ingram Barge's culpability in destroying the evidence. Thus, the Court finds that giving an adverse inference instruction at trial

is well within this Court's discretion to fashion an appropriate remedy for the spoliation that occurred. However, the Court defers drafting such an instruction until trial.

The Court further finds that Ingram Barge should pay fees and costs associated with this motion. Therefore, the Court **DIRECTS** counsel for Plaintiffs to file with the Court **on or before April 7, 2006**, an itemized list of his fees and expenses. If Ingram Barge objects to any of these amounts, the Court **DIRECTS** it to file its objections **on or before April 21, 2006**. Plaintiffs must file their Reply **on or before April 28, 2006**.

Accordingly, for the foregoing reasons, the Court **GRANTS, in part**, Plaintiffs' motion to the extent the Court finds spoliation occurred and an adverse inference instruction is warranted. The Court also **GRANTS** Plaintiffs' motion with regard to their request for leave to file a Memorandum in excess of twenty pages. The Court **DENIES** Plaintiffs' motion to the extent they seek other remedies.[1] The Court also **ORDERS** that Plaintiffs be reimbursed their fees and costs associated with this motion.

---

[1] At the hearing, counsel for Ingram Barge offered to allow Plaintiffs to reboard the vessel and conduct testing on another area of the barge which had not been repainted. Counsel stated that it would not challenge any evidence gathered by this inspection based upon the fact that it was not where Mr. Douglas was located when the accident occurred. Although Plaintiffs' counsel expressed other concerns about whether such evidence would be useful to his case, the Court agrees that Plaintiffs' counsel should be able to inspect another area of the barge if he so chooses. The decision of whether or not to do so lies with Plaintiffs' counsel.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

    ENTER:    March 24, 2006

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE